IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David R. Avenetti,<br><br>    Petitioner,<br><br>vs.<br><br>Charles L. Ryan, et al.,<br><br>    Respondents. | No. CV 09-116-PHX-NVW (MHB)<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE NEIL V. WAKE, UNITED STATES DISTRICT JUDGE:

    This matter comes before this Court upon consideration of a *pro se* Petition for Writ of Habeas Corpus, filed originally on January 20, 2009, by Petitioner David R. Avenetti, who is confined in the Arizona State Prison. (Doc. #1.) That Petition and an Amended Petition were dismissed by the Court. (Docs. ##6, 10.) Petitioner filed a Second Amended Petition, along with an Addendum on August 18, 2009. (Docs. ##12, 13.) Based upon that filing, the Court vacated its previous Order of dismissal, and ordered Respondents to file a Response to the Second Amended Petition (hereinafter "the Petition"). Petitioner subsequently filed a Supplement to his Petition, and an Addendum (Docs. ##17, 22). On January 8, 2010, Respondents filed Answer. (Doc. #19.) Although Petitioner had until March 8, 2010 to file a Reply, he failed to do so.

**BACKGROUND**

I. <u>Trial Proceedings</u>.

On February 2, 2004, an Arizona grand jury returned an indictment against Petitioner, charging Petitioner with two counts of Molestation of a Child, class 2 felonies and dangerous crimes against children, and one count of Attempted Molestation of a Child, a class 3 felony and dangerous crime against children. (Doc. #23, Exh. A.) Counts two and three alleged that Petitioner had molested minor T.B, between March 31, 1989 and March 30, 1990, in two different manners (penis to mouth and hand to vagina), and count four alleged that Petitioner had attempted to molest minor G.A. on or between May 1 and September 30, 2003. The Maricopa County Public Defender represented Petitioner until May 18, 2004, when private counsel, with the consent of Petitioner substituted in as counsel of record. (<u>Id.</u>, Exh. B.)

Trial proceeded on June 9, 2004, and concluded on June 16, 2004, with verdicts of guilty on count four (hand to vagina) and count five. (Doc. #23, Exh. D.) Prior to sentencing, numerous letters were submitted to the court asking for leniency, including a letter from victim G.A. (<u>Id.</u>, Exh. E.) On July 30, 2004, Petitioner was sentenced to ten (10) years in prison on count four and lifetime probation on count five, to begin upon Petitioner's discharge from prison. (<u>Id.</u>, Exh. F.)

II. <u>Direct Appeal.</u>

Petitioner appealed his judgment and conviction to the Arizona Court of Appeals, raising two issues: (1) the conviction for the offense against T.B. was obtained in violation of the statute of limitations, and violated Petitioner's due process rights under the Fifth and Fourteenth Amendments of the United States Constitution, and (2) that the failure to sever the counts for trial resulted in fundamental error, depriving him of a fair trial. (Doc. #23, Exh. G.) The Court of Appeals, in a Memorandum Decision issued on August 18, 2005, affirmed Petitioner's convictions. (<u>Id.</u>, Exh. I.)

///
///
///

1  III.    Post-Conviction Proceedings.

2      While Petitioner's appeal was pending he filed a Notice of Post-Conviction Relief ("PCR"), which was subsequently withdrawn by Petitioner's counsel for the reason that his appeal was pending. (Doc. #23, Exh. J, at 4.)  On October 7, 2005, Petitioner filed another Notice of PCR. (Id., Exh. K.)  On January 12, 2007, Petitioner filed a Pro-Per Petition for PCR. (Id., Exh. M.)  The claims he raises in this petition are contained within a letter attached to the cover, and because it is somewhat rambling, it is difficult to discern the claims that were raised. (Id.)  As best as can be determined, Petitioner claimed that (1) he is innocent; (2) he advised his lawyer he is innocent and that she didn't do "all she could" to defend him; (3) the deputy who escorted him to trial told him that "if [he] spoke out of turn he would remove me," and (4) that there was "no actual proof" that he committed the crime." (Id., at 4-5.) Petitioner also attached another letter written by him dated October 13, 2006, in which he also professes his innocence, and complains that his lawyer did not give him "the opportunity" to say something, and did not "[do] anything to dispute the testimony." (Id., at 10, 12.)  Petitioner also attached e-mail correspondence, purportedly written by victim G.A. on July 4, 2006, who claimed that Petitioner "did not touch" her. (Id., at 13-14.) Petitioner did not cite any legal authority in support of his claims, or any specific facts in addition to those alleged in his claim.

    The State filed a response, asking that the petition for PCR be dismissed as a claim of innocence is not cognizable in PCR proceedings pursuant to Rule 32, Arizona Rules of Criminal Procedure. (Doc. #23, Exh. N.)  The trial court found the State's argument "well taken" and denied Petitioner's petition for PCR. (Id., Exh. O.)

    Petitioner filed a *pro se* Petition for Review to the Arizona Court of Appeals, claiming that (1) his counsel was ineffective because she "did nothing to defend [him] or dispute the testimony against me," "failed to object to expert witness statements," and "failed to put [Petitioner] on stand and that his silence was "due to the deputy who escorted [him] to court, that if [Petitioner] spoke out of turn he would remove [Petitioner]; (2) his direct appeal counsel was ineffective because she "filed on no good reasons, [e]ven though she knew all

about [his] past and [] words of innocense," and; (3) Petitioner is innocent and there was "no proof given." (Doc. #23, Exh. P, at 2.) The Court of Appeals summarily denied the petition on September 26, 2008. (Id., Exh. Q.) Petitioner did not cite any legal authority in support of his claims, or any specific facts in addition to those alleged in his claim.

On August 18, 2009, Petitioner filed the instant habeas petition with this Court setting forth the following grounds for relief:

> I truly feel that my attorney Nanci Petersen failed to use everything, especially my testimony. Thus denying me my Constitutional rights - the Sixth Amendment and the Fourteenth Amendment. I say the 14th because at no time did the state prove I did anything. This is after my repeatedly asking Petersen to let me talk. My silence was due to my ignorance and fear. I say fear because the deputy that escorted me to court told me if I spoke out of turn he would remove me.

(Doc.#12, at 6.)

Petitioner also "swears that he is an innocent man." (Id.) Petitioner cites the Sixth and Fourteenth Amendment in support of his petition.

Respondents concede that Petitioner's habeas petition is timely under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), but that Petitioner's claim of ineffective assistance is procedurally defaulted, and in any event, fails on the merits. (Doc. #23.)

**DISCUSSION**

I. <u>Exhaustion and Procedural Default.</u>

Before a federal court may grant habeas corpus relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 842 (1999); <u>Coleman v. Thompson</u>, 501 U.S. 722, 731 (1991). The federal court will not entertain a petition for writ of habeas corpus unless each and every issue has been exhausted. <u>Pliler v. Ford</u>, 542 U.S. 225, 230 (2004); <u>Rose v. Lundy</u>, 455 U.S. 509, 521-22 (1982). A petitioner has the burden of alleging exhaustion. <u>Cartwright v. Cupp</u>, 650 F.2d 1103, 1104 (9th Cir. 1981)(*per curiam*), *cert. denied*, 455 U.S. 1023 (1983). To properly exhaust state remedies, the prisoner must have afforded the state courts the opportunity to rule upon the merits of his federal constitutional claims by "fairly presenting"

them to the state courts in a procedurally appropriate manner. Castille v. Peoples, 489 U.S. 346, 349 (1989); Baldwin v. Reese, 541 U.S. 27, 29 (2004) (stating that "[t]o provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' her claim in each appropriate state court . . . thereby alerting the court to the federal nature of the claim").

A petitioner must describe both the operative facts and the federal legal theory so that the state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing on his constitutional claim. Id. A state prisoner "must include reference to a specific constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief." Gray v. Netherdland, 518 U.S. 152, 162-63 (1996). General appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are not sufficient to establish fair presentation of a federal constitutional claim. Lyons v. Crawford, 232 F.3d 666, 669 (9th Cir. 2000), amended on other grounds, 247 F.3d 904 (9th Cir. 2001). In cases not carrying a life sentence or the death penalty, claims are exhausted once the Arizona Court of Appeals has ruled on them. Swoopes v. Sublett, 196 F.3d 1008, 1010 (9th Cir. 1999).

Where a prisoner fails to "fairly present" a claim to the state courts in a procedurally appropriate manner, his claim is procedurally defaulted. Ylst v. Nunnemaker, 501 U.S. 797, 802-05 (1991); Coleman, 501 U.S. at 731-32. There are two types of procedural default.

First, a state court may have applied a procedural bar when the prisoner attempted to raise the claim in state court. Nunnemaker, 501 U.S. at 802-05. For example, a habeas petitioner may be barred from raising federal claims that he failed to preserve in state court by making contemporaneous objections at trial or by raising the claim on direct appeal or post-conviction review. Bonin v. Calderon, 59 F.3d 815, 841-42 (9th Cir. 1995)(stating that failure to raise contemporaneous objection at trial to an alleged violation of federal rights constitutes a procedural default of that issue); Thomas v. Lewis, 945 F.2d 1119, 1121 (9th Cir. 1991)(finding procedural default where the Arizona Court of Appeals held that petitioner had waived his claims by failing to raise them on direct appeal or in his first petition for post-conviction review). If the state court found a procedural bar but also addressed the merits

of the underlying federal claim, the "alternative" ruling does not vitiate the independent state procedural bar. Harris v. Reed, 489 U.S. 255, 264 n.10 (1989); Carringer v. Lewis, 971 F.2d 329, 333 (9th Cir. 1992) (state supreme court found ineffective assistance of counsel claims "barred under state law," but also discussed and rejected the claims on the merits, *en banc* court held that the "on-the-merits" discussion was an "alternative ruling" and the claims were procedurally defaulted and barred from federal review). A higher court's subsequent summary denial of review affirms the lower court's application of a procedural bar. Nunnemaker, 501 U.S. at 803. In order to "constitute adequate and independent grounds sufficient to support a finding of procedural default, a state rule must be clear, consistently applied, and well-established at the time of the petitioner's default." Wells v. Maass, 28 F.3d 1005, 1010 (9th Cir. 1994). Arizona courts have consistently applied their procedural default rules. Stewart v. Smith, 536 U.S. 856, 860 (2002)(holding that Arizona Rule of Criminal Procedure 32.2(a) is an adequate and independent procedural bar); Ortiz v. Stewart, 149 F.3d 923, 931-32 (9th Cir. 1998)(rejecting the argument that Arizona courts have not "strictly or regularly followed" Rule 32); Carriger, 971 F.2d at 333 (rejecting the assertion that Arizona courts' application of procedural default rules had been "unpredictable and irregular").

In the second procedural default scenario, the state prisoner may not have presented the claim to the state courts, but pursuant to the state courts' procedural rules, a return to state court would be "futile." Teague v. Lane, 489 U.S. 288, 297-99 (1989). Generally, any claim not previously presented to the Arizona courts is procedurally barred from federal review because any attempt to return to state court to properly exhaust a current habeas claim would be "futile." Ariz. R. Crim. P. 32.1, 32.2(a) & (b); Beaty v. Stewart, 303 F.3d 975, 987 (9th Cir. 2002); State v. Mata, 185 Ariz. 319, 322-27, 916 P.2d 1035, 1048-53 (1996); Ariz. R. Crim. P. 32.1(a)(3) (relief is precluded for claims waived at trial, on appeal, or in any previous collateral proceeding); 32.4(a); Ariz. R. Crim. P. 32.9 (stating that petition for review must be filed within thirty days of trial court's decision). A state post-conviction action is futile where it is time barred. Beaty, 303 F.3d at 987; Moreno v. Gonzalez, 116 F.3d 409, 410 (9th Cir. 1997) (recognizing untimeliness under Ariz. R. Crim. P. 32.4(a) as

a basis for dismissal of an Arizona petition for post-conviction relief, distinct from preclusion under Rule 32.2(a)).

In either case of procedural default, federal review of the claim is barred absent a showing of "cause and prejudice" or a "fundamental miscarriage of justice." Dretke v. Haley, 541 U.S. 386, 393-94 (2004); Murray v. Carrier, 477 U.S. 478, 488 (1986). To establish cause, a petitioner must establish that some objective factor external to the defense impeded his efforts to comply with the state's procedural rules. Id. The following objective factors may constitute cause: (1) interference by state officials, (2) a showing that the factual or legal basis for a claim was not reasonably available, or (3) constitutionally ineffective assistance of counsel. Id. To establish prejudice, a prisoner must demonstrate that the alleged constitutional violation "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimension." United States v. Frady, 456 U.S. 152, 170 (1982). Where petitioner fails to establish cause, the court need not reach the prejudice prong.

To establish a "fundamental miscarriage of justice" resulting in the conviction of one who is actually innocent, a state prisoner must establish that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in light of new evidence. Schlup v. Delo, 513 U.S. 298, 327 (1995); 28 U.S.C. § 2254(c)(2)(B).

II.     Law and Applicable Facts.

A.      Ineffective Assistance of Trial Counsel.

Petitioner did not raise this issue in the trial court. In his *pro se* petition for PCR, he related that he had told [his PCR counsel] that he didn't "feel that [his] trial lawyer, Nancy Petersen, did all she could to defend me." (Doc. #23, Exh. M, at 4.) Petitioner then states that he "was told by the deputy who escorted [him] that if [he] spoke out of turn [the deputy] would remove him. So, in [his] ignorance, [he] stayed quiet." (Id.) This curt passage was not sufficient to put the state on notice that Petitioner was raising a claim that his attorney was ineffective in that she prevented Petitioner from testifying in his trial. In fact, neither the state prosecutor or the trial judge considered this issue raised in Petitioner's PCR. (Id.,

Exhs. N, O.) Furthermore, Petitioner did not alert the state court to the federal nature of his claim, as he did not cite any legal authority in support. Thus, he did not fairly present this issue.

This claim is barred by the exhaustion doctrine. Petitioner's claim was not presented to every level of state court in a procedurally correct manner. 28 U.S.C. §2254(b)(1)(A); see also Baldwin, 541 U.S. at 29; Carey v. Saffold, 536 U.S. 214, 219-20 (2002). State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process. O'Sullivan, 526 U.S. at 845.

Petitioner has not demonstrated cause and prejudice or fundamental miscarriage of justice to excuse his procedural default. There is simply no basis to conclude that Petitioner could not have properly raised this issue in a timely manner. There is also no basis to conclude that even if Petitioner had testified at trial and denied the charges, that no reasonable juror would have found him guilty beyond a reasonable doubt. Petitioner denied touching the victims intentionally or with a sexual purpose when he was interviewed by a law enforcement agent, Detective DiModica during his investigation. Even though Petitioner did not testify during his trial, Detective DiModica testified at trial to the statements made by Petitioner to him denying the charges. (Doc. #23, Exh. T, at 13-35.)

State court remedies are no longer available to Petitioner, as the time to seek post-conviction relief in the trial court has long since past. Ariz.R.Crim. P. 32.4(a) (mandating that petition be filed within ninety days after the entry of judgment and sentence or within thirty days of the order and mandate in the direct appeal). Petitioner has therefore procedurally defaulted his ineffective assistance of counsel claim and federal habeas review is procedurally barred.

B.  Petitioner's Claim of Actual Innocence.

Petitioner raised his claim of actual innocence in the trial court in his PCR petition. The trial court adopted the prosecutor's argument that the court lacked jurisdiction to hear the claim, specifically in that actual innocence claim are not "within the scope of Rule 32.

1 . . . [t]he fact that [Petitioner] now says he is innocent and his family members vouching for
2 his character has nothing to do with the validity of his conviction or sentence." (Doc. #32,
3 Exh. N, at 2.)

4 Essentially, the trial court determined that Petitioner's claim of actual innocence was
5 not cognizable in a Rule 32 proceeding. That determination was erroneous for two reasons.
6 Rule 32.1 of the Arizona Rules of Criminal Procedure sets forth the scope of the remedy, to
7 include: "(e)[n]ewly discovered material facts probably exist and such facts probably would
8 have changed the verdict or sentence. . . .," and "(h) [t]he defendant demonstrates by clear
9 and convincing evidence that the facts underlying the claim would be sufficient to establish
10 that no reasonable fact-finder would have found defendant guilty of the underlying offense
11 beyond a reasonable doubt. . . ."

12 Arizona state courts have considered claims of actual innocence in Rule 32
13 proceedings. State v. Swoopes, 216 Ariz. 390, FN3 (App. 2008) (In his rule 32 proceedings,
14 Swoopes also included below a claim that "*he is factually innocent of the crimes of which he*
15 *was convicted*."); State v. Nordstrom, 200 Ariz. 229, 255 (2001) (affirming the denial of a
16 Rule 24.2 motion "without prejudice to the defendant's right to raise appropriate issues
17 concerning his actual innocence, . . . or newly discovered evidence in a Rule 32 proceeding).
18 Claims pursuant to Rule 32.1(h) are not subject to preclusion under Rule 32.2. Amendments
19 in 2000 to the Rule "add[ed] a claim of actual innocence as an exception to preclusion."
20 Ariz.R.Crim.P.32.2, Cmt. (2002).

21 Likewise, a claim of actual innocence based upon newly discovered evidence can be
22 raised in a Rule 32 proceeding, provided the facts are "newly discovered," "material," and
23 "probably would have changed the verdict." Ariz.R.Crim.P. 32.1(e). Petitioner attached to
24 his petition for PCR purported email correspondence, dated after Petitioner's direct appeal
25 was concluded, from one of the victims of Petitioner's offenses of conviction claiming that
26 Petitioner "never did touch her." (Doc. #23, Exh. M, at 13-14.) The trial court characterized
27 this evidence as "family members vouching for his character." (Id., Exh. N, at 2.) A victim's
28 claim that a defendant did not touch her after testifying at trial that he did can hardly be

characterized as vouching for his character. This claim would not be precluded pursuant to Rule 32.2(a), as it could not have been raised on appeal, and had not been raised in any previous collateral proceeding. Rule 32.2(a), (b), Ariz.R.Crim.P.

Despite the state court's failure to apply a valid procedural bar to Petitioner's claim, it is unexhausted, as Petitioner did not describe both the operative facts and the federal legal theory so that the state courts had a "fair opportunity" to apply controlling legal principles to the facts bearing on his constitutional claim. Petitioner did not cite any legal authority in support of his claim. Thus his claim is unexhausted and should be dismissed.

Alternatively, the court may exercise its discretion to deny the claim on its merits. 28 U.S.C. §2254(b)(2) ([a]n application for a writ of habeas corpus may be denied on its merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State).

Petitioner's bare assertion that the state did not "prove anything" or that he innocent is without merit. The evidence presented in the trial court established the following: in the summer between fourth and fifth grades, G.A. was 9 years old, and awoke in her parents' bed to find Petitioner touching her "front bottom part," and Petitioner's fingertip reaching underneath the waistband of her shorts. (Id., Exh. S, at 144-50.) G.A. shook her father "awake" and he apologized, saying that he thought G.A. was her mother, Brenda. (Id., at 151.) G.A. got up and told her mother. (Id., at 26, 151.) Brenda confronted Petitioner, who indicated that the touching was inadvertent; he thought that Brenda was sleeping next to him, and he was trying to touch her. (Id., at 26-27, 153.)

Sometime later, G.A. and her sister K.A. called their older sister T.B. and asked to spend some time with her. (Doc. #23, Exh. R, at 72; Exh. S, at 156.) G.A. revealed to T.B. that Petitioner had tried to touch her "down there." (Id., Exh. R, at 72-73; Exh. S, at 157.) T.B. told G.A. to talk to someone at school. (Id., Exh. R, at 73; Exh. S, at 157-58.) Although T.B. had not told G.A. that Petitioner had also touched her inappropriately, T.B. had, in the past, conveyed that G.A. should confide in someone if she was touched inappropriately. (Id., Exh. R, at 73.)

Thereafter, G.A. reported the incident to school authorities, stating that Petitioner was "touching me in wrong ways." (Doc. #23, Exh. S, at 142-45.) The investigating detective contacted T.B. and asked her to come to Child Help Center. (Id., Exh. R, at 82.) T.B. was born on March 31, 1980, and recounted that between the ages of 10 and 12 years old, there were several occasions when Petitioner touched her vagina. (Id., at 74.) The touching would start out with back rubs and ended with Petitioner rubbing the top of her legs, buttocks, and vagina. (Id., at 61-64.) On one occasion, Petitioner instructed T.B. to close her eyes so he could give her a kiss. (Id., at 66.) When T.B. opened her eyes, Petitioner's penis was in front of her face. (Id., at 67-68.)

T.B. told her mother Brenda what was occurring. (Doc. #23, Exh. R, at 66, 70.) Brenda denied ever being told. (Id., at 121.) When T.B. was a teenager she was sent to a group home called Tumbleweed and told a counselor about the incidents, but "they didn't do anything." (Id., at 70.) Brenda was present when T.B. made the revelation to the Tumbleweed counselor. (Id., at 121-22.)

During a confrontation call from T.B. on January 22, 2004, Brenda acknowledged that her children had reported a number of incidents to her. (Doc. #23, Exh. R, at 122; Exh. S, at 21-22.) Brenda conveyed that she had not believed T.B. in the past, but did so now. (Id., Exh. R, at 122-24.) In an interview with an investigating detective, Petitioner maintained that he thought that G.A. was his wife when she was laying next to him, and that any contact with T.B.'s genitals during massages was purely accidental. (Id., Exh. T, at 16-24.)

G.A.'s purported e-mail correspondence does not affect the validity of the conviction. First, she indicates that "[d]uring court when [she] was on the stands [she] told the truth and told them that [her] dad never did touch [her]." (Doc. #23, Exh. M, at 13.) Although G.A. did not deny that her father had touched her during the trial, she was adamant at trial that the touching was an "accident," and that Petitioner had only touched her just underneath the waistband of her shorts. (Id., Exh. S, at 244, 250, 159.) Her step-sister T.B. testified that G.A. had reported to her that her dad had touched her "down there," (Id., Exh. R, at 72-73) G.A. told her school teacher and a C.P.S. worker that Petitioner had touched her, (Id., Exh.

S, at 144-45) and her mother Brenda also testified that G.A. had reported to her that Petitioner had touched her. (Id., at 26-27.) Brenda plead guilty to a felony charge of failing to protect G.A. by not reporting the incident. (Id., at 27-29.)

The e-mail purportedly authored by G.A. over three years after the incident constitutes impeachment evidence at best, and is not sufficient to undermine Petitioner's conviction. Although "newly discovered," it is not material and would not have changed the verdict or sentence. The comment to Ariz.R.Crim.P. 32.1(e) (1992 Amendment), states:

> Impeachment evidence will rarely be of a type which would probably have changed the verdict at trial. However, where newly-discovered impeachment evidence substantially undermines testimony which was of critical significance at trial, the court should evaluate whether relief should be granted on the grounds that the evidence probably would have changed the result.

Even if a statement made by G.A. over three years after the trial were introduced at a new trial, it would serve as weak impeachment considering all of the other evidence presented at trial, and is not the type of evidence that would probably have changed the trial verdict. Petitioner has not established that no reasonable fact-finder would have found him guilty of the underlying offense beyond a reasonable doubt. Petitioner's claim of innocence fails on the merits.

**IT IS THEREFORE RECOMMENDED:**

That the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. #1) be **DENIED** and **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because Petitioner has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72. Thereafter, the parties have fourteen days within which to

file a response to the objections. Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's recommendation. See Fed. R. Civ. P. 72.

**DATED** this 28th day of April, 2010.

*Michelle H. Burns*
Michelle H. Burns
United States Magistrate Judge